1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MALCOLM GRAY,

            Plaintiff,

v.

GREG COX et al.,

            Defendants.

Case No. 2:14-cv-1094-JAD-PAL

**Screening Order
on Amended Complaint**

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted an amended civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 6). Plaintiff has paid the full filing fee for this matter. (Doc. 3). The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A.

**I.     SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1), (2). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court to dismiss a prisoner's claim if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *accord* FED. R. CIV. PROC. 12(b)(6).

1

1      Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove

2   any set of facts in support of the claim that would entitle him or her to relief.  *See Morley v. Walker*,

3   175 F.3d 756, 759 (9th Cir. 1999).  In making this determination, the court takes as true all

4   allegations of material fact stated in the complaint and construes them in the light most favorable to

5   the plaintiff.  *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  A reviewing court

6   should "begin by identifying pleadings [allegations] that, because they are no more than mere

7   conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679

8   (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported

9   with factual allegations."  *Id.*  "Determining whether a complaint states a plausible claim for relief

10  [is] a context-specific task that requires the reviewing court to draw on its judicial experience and

11  common sense."  *Id*.  The plaintiff must provide more than mere labels and conclusions, and a

12  formulaic recitation of the elements of a cause of action is insufficient.  *Bell Atlantic Corp. v.*

13  *Twombly*, 550 U.S. 544, 555 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).

14      Although allegations of a pro se complainant are held to less stringent standards than formal

15  pleadings drafted by lawyers, *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S.

16  519, 520 (1972); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), all or part of

17  a complaint filed by a prisoner may be dismissed *sua sponte* if the prisoner's claims lack an arguable

18  basis either in law or in fact.  This includes claims based on legal conclusions that are untenable

19  (e.g., claims against defendants who are immune from suit or claims of infringement of a legal

20  interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,

21  fantastic or delusional scenarios).  *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also*

22  *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).  If it is clear from the face of the complaint

23  that any deficiencies could not be cured by amendment, leave to amend is not required.  *See Cato v.*

24  *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

25  **II.      SCREENING OF AMENDED COMPLAINT**

26      In the amended complaint, plaintiff sues multiple defendants for events that took place while

27  plaintiff was incarcerated at High Desert State Prison (HDSP).  (Doc. 6 at 1).  Plaintiff sues

28

2

1   defendants NDOC Director Greg Cox, Deputy Director Sheryl Foster, Associate Warden Jennifer

2   Nash, Warden Dwight Neven, Warden Bruce Stroud, and Correctional Officer Armbruster.   (*Id.* at

3   2-3).  Plaintiff alleges two counts and seeks declaratory judgment, injunctive relief, and monetary

4   damages.  (*Id.* at 8, 16-17).

5   **A.      Count I**

6   In Count I, plaintiff alleges the following: On June 24, 2013, Armbruster neglected to pass

7   out mail to the Unit 11 inmates.  (Doc. 6 at 4).  The next day, porters informed him that they had

8   found a week's worth of Unit 11 mail in the trash bin.  (*Id.*).  During that time, plaintiff had been

9   waiting for mail containing a copy of a recent obituary for an immediate family member.  (*Id.*).

10   Plaintiff filed a grievance against officers for throwing inmate mail away.  (*Id.*).  Plaintiff also had

11   his family members call HDSP and complain.  (*Id.* at 6).  As a result, Foster, Nash, Neven, Filson,

12   Stroud, and Armbruster commenced a retaliatory campaign against plaintiff and stopped giving him

13   his mail and/or delayed the receipt of his mail for more than 30 days.  (*Id.* at 4, 6).  Plaintiff alleges

14   First Amendment censorship of mail and retaliation.  (*Id.* at 6).

15   Generally, prisoners have a First Amendment right to send and receive mail.  *Witherow v.*

16   *Paff*, 52 F.3d 264, 265 (9th Cir. 1995).  The court analyzes prison regulations concerning incoming

17   mail under the factors outlined in *Turner v. Safley*, 482 U.S. 78, 89 (1987).  *See Thornburgh v.*

18   *Abbott*, 490 U.S. 401, 411-13 (1989).

19   Additionally, prisoners have a First Amendment right to file prison grievances and to pursue

20   civil rights litigation in the courts.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

21   "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism

22   to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for

23   having exercised those rights necessarily undermine those protections, such actions violate the

24   Constitution quite apart from any underlying misconduct they are designed to shield."  *Id*.

25   To state a viable First Amendment retaliation claim in the prison context, a plaintiff must

26   allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because

27   of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

28

3

1   First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

2   goal." *Id*. at 567-68.

3          Plaintiff states a colorable First Amendment claim.  Based on the allegations, there does not

4   appear to be a legitimate penological interest for prison officials to throw away Unit 11's mail.

5   Additionally, based on the allegations, after plaintiff filed a grievance against Armbruster for

6   throwing away the mail, defendants intentionally withheld plaintiff's mail from him in retaliation for

7   filing a grievance against an officer.  Count I shall proceed against defendants Foster, Nash, Neven,

8   Filson, Stroud, and Armbruster.

9          **B.      Count II**

10          In Count II, plaintiff alleges the following: Cox, Foster, Nash, Neven, and Stroud

11   promulgated a policy that fails to protect inmates.  (Doc. 6 at 5).  The policy encourages or forces

12   inmates to fight each other before they can receive a bed move.  (*Id.* at 8).  Plaintiff has witnessed

13   eight instances where cell mates fought with each other because defendants would not move them.

14   (*Id.*).  When a violent episode occurs, defendants relax the bed-move policy and permit inmates to

15   move to more suitable cells.  (*Id.* at 9).

16          He further alleges that HDSP prisoners are forced to live with known prison rapists and other

17   violent offenders due to the no-convenient-bed-move policy.  (*Id.* at 10).  Plaintiff and other

18   similarly situated inmates must live with violent prisoners who make prison alcohol and weapons

19   and keep them in their cells.  (*Id.*).  The warden's policy is to write both inmates in the cell up and

20   fire the inmates from their respective jobs.  (*Id.*).  Cox, Neven, Nash, Filson, Stroud, and Foster

21   know full well that inmates should not and cannot be accountable for the actions of their cell mates.

22   (*Id.*).

23          Within the past five months, Plaintiff was recently fired from a job and sent to the hole

24   because contraband items had been found in the common area.  (*Id.* at 11).  After the contraband

25   items had been found, prison officials interviewed ten inmates but not before firing them from their

26   work assignments.  (*Id.*).  Prison officials told all ten inmates that, unless someone stood up for the

27   contraband, all ten inmates would be fired and their levels reduced.  (*Id.*).

28

4

1    Plaintiff was never given a notice of classification hearing while in administrative

2   segregation.  (*Id.*).   Plaintiff believes this was done in retaliation because the administrative

3   segregation did not serve any penological goal.  (*Id.* at 12).   Additionally, when prison officials

4   asked whether anybody had threatened him, plaintiff responded "no."   (*Id.*).   The group punishment

5   and peer-pressure model poses a serious threat to all inmates.  (*Id.*).   Plaintiff is in a situation where

6   he was not found guilty for any charges but has to earn his way back to his level.  (*Id.*).   Plaintiff

7   has witnessed at least ten security-threat-group inmates and gay, bi, and transgender inmates obtain

8   cell moves for safety concerns even though general-population inmates are not entitled to the same

9   protections.  (*Id.* at 13).  Plaintiff alleges violations of due process, failure to protect, and equal

10   protection.   (*Id.* at 8).

11    As an initial matter, the court notes that a majority of Count II describes incidents that

12   happened to other inmates.  (*See generally id.* at 8-10, 12-13).  Plaintiff can only sue defendants for

13   events that happened to him; he may not sue defendants for events that happened to other inmates.

14   *See Cato v. United States*, 70 F.3d 1103, 1105 n.1 (9th Cir. 1995); *C.E. Pope Equity Trust v. United*

15   *States*, 818 F.2d 696, 697 (9th Cir. 1987) (holding that *pro se* litigants have no authority to represent

16   anyone other than themselves).  The Court will, therefore, only address the events that happened to

17   plaintiff.

18    Count II only alleges that plaintiff had been fired from his job and sent to the hole with ten

19   other inmates because prison officials had found contraband in the common area.  According to the

20   allegations, plaintiff never received a notice of classification hearing.  The court finds that plaintiff

21   is attempting to allege a due process claim.

22    Under the Fourteenth Amendment, prisoners "may not be deprived of life, liberty, or

23   property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  However,

24   "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights

25   are not subject to restrictions imposed by the nature of the regime to which they have been lawfully

26   committed." *Id*.  "[T]here must be mutual accommodation between institutional needs and

27   objectives and the provisions of the Constitution that are of general application." *Id*.  The Supreme

28

5

1  Court held that a prisoner possesses a liberty interest under the federal constitution when a change

2  occurs in confinement that "imposes atypical and significant hardship on the inmate in relation to the

3  ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

4  When a prisoner is placed in administrative segregation, prison officials must, within a

5  reasonable time after the prisoner's placement, conduct an informal, non-adversary review of the

6  evidence justifying the decision to segregate the prisoner. *See Hewitt v. Helms*, 459 U.S. 460, 476

7  (1983), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995).  After the

8  prisoner has been placed in administrative segregation, prison officials must periodically review the

9  initial placement.  *See Hewitt*, 459 U.S. at 477 n.9.  The Ninth Circuit has held that where the

10 prisoner alleges material differences between the conditions in general population and administrative

11 segregation, the prisoner's procedural due process claim should not be dismissed on the pleadings.

12 *See Jackson v. Carey*, 353 F.3d 750, 755-57 (9th Cir. 2003).

13 Plaintiff states a colorable due process claim.  Based on the allegations, prison officials fired

14 him from his job and placed him in the hole because prison officials had found contraband in a

15 common area that ten inmates had used.  Even though there was no indication that the contraband

16 belonged to Plaintiff, prison officials fired him from his job and kept him in the hole.  Based on the

17 allegations, prison officials never reviewed his placement.  Eventually, Plaintiff was found not guilty

18 of contraband but still lost his job.  This claim shall proceed against defendants Cox, Foster, Nash,

19 Neven, and Stroud.

20 Plaintiff fails, however, to state a claim for retaliation, failure to protect, or equal-protection

21 violations and the court denies these claims with prejudice, as amendment would be futile.[1]  With

22 respect to retaliation, there are no allegations that prison officials put plaintiff in the hole because he

23 had engaged in a protected activity such as filing a grievance.  With respect to failure to protect,

24 there are no allegations that plaintiff had requested a bed move change, that prison officials denied

25 his request, and that plaintiff ended up in an altercation with his cell mate.  With respect to equal-

26

27 [1] The Court finds that leave to amend these claims would be futile because the Court granted Plaintiff leave to amend these exact same claims in its original screening order.  (*See* Doc. 4 at 4-7).

28 Plaintiff has failed to state a claim upon amendment.

6

1  protection violations, there are no allegations that plaintiff requested a bed-move change for safety

2  concerns and that prison officials denied his request but granted a security threat group inmate or a

3  gay, bi, and transgender inmate a bed-move change for the same safety concerns.

4  **III.    CONCLUSION**

5  For the foregoing reasons, **IT IS ORDERED** that Count I, alleging First Amendment violations,

6  shall proceed against defendants Foster, Nash, Neven, Filson, Stroud, and Armbruster.

7  **IT IS FURTHER ORDERED** that the portion of Count II, alleging due process violations,

8  shall proceed against defendants Cox, Foster, Nash, Neven, and Stroud.  However, the portion of

9  Count II, alleging retaliation, failure to protect, and equal protection violations, are dismissed with

10  prejudice, as amendment would be futile, for failure to state a claim.

11  **IT IS FURTHER ORDERED** that, given the nature of the claim(s) that the court has

12  permitted to proceed, this action is **STAYED** for 90 days to allow Plaintiff and Defendant(s) an

13  opportunity to settle their dispute before an answer is filed or the discovery process begins.  During

14  this 90-day stay period, no other pleadings or papers shall be filed in this case, and the parties shall

15  not engage in any discovery.  The court will refer this case to the Court's Inmate Early Mediation

16  Program, and the court will enter a subsequent order.  Regardless, on or before 90 days from the date

17  this order is entered, the Office of the Attorney General shall file the report form attached to this

18  order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to

19  the end of the 90-day stay.  If the parties proceed with this action, the court will then issue an order

20  setting a date for defendants to file an answer or other response.  Following the filing of an answer,

21  the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

22  **IT IS FURTHER ORDERED** that "settlement" may or may not include payment of money

23  damages.  It also may or may not include an agreement to resolve plaintiff's issues differently.  A

24  compromise agreement is one in which neither party is completely satisfied with the result, but both

25  have given something up and both have obtained something in return.

26  **IT IS FURTHER ORDERED** that, if any party seeks to have this case excluded from the

27  inmate mediation program, that party shall file a "motion to exclude case from mediation" on or

28

7

1   before 21 days from the date of this order.  The responding party shall have 7 days to file a response.

2   No reply shall be filed.  Thereafter, the court will issue an order, set the matter for hearing, or both.

3      **IT IS FURTHER ORDERED** that the Clerk of the Court shall electronically **SERVE** a

4   copy of this order and a copy of Plaintiff's amended complaint (Doc. 6) on the Office of the

5   Attorney General of the State of Nevada, attention Kat Howe.

6      **IT IS FURTHER ORDERED** that the Attorney General's Office shall advise the court

7   within 21 days of the date of the entry of this order whether it will enter a limited notice of

8   appearance on behalf of defendants for the purpose of settlement.  No defenses or objections,

9   including lack of service, shall be waived as a result of the filing of the limited notice of appearance.

10      DATED this 11th day of February, 2015.

11

12             _____
          Jennifer Dorsey
          United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

1

2                          **UNITED STATES DISTRICT COURT**

3                               **DISTRICT OF NEVADA**

4   MALCOLM GRAY,                             )
                                              )
5                Plaintiff,                   )
                                              )        2:14-cv-1094-JAD-PAL
6        v.                                   )
                                              )
7                                             )        REPORT OF ATTORNEY GENERAL
    GREG COX et al.,                          )        RE: RESULTS OF 90-DAY STAY
8                                             )
                 Defendants.                  )
9   _____

10  **NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM.
    THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

11

12       On _____ [*the date of the issuance of the screening order*], the Court issued its

13  screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that

14  certain specified claims in this case would proceed.  The Court ordered the Office of the Attorney

15  General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening

16  order to indicate the status of the case at the end of the 90-day stay.  By filing this form, the Office of

17  the Attorney General hereby complies.

18                                  **REPORT FORM**
    [Identify which of the following two situations (identified in bold type) describes the case, and
19  follow the instructions corresponding to the proper statement.]

20  **Situation One: Mediated Case: The case was assigned to mediation by a court-appointed
    mediator during the 90-day stay.**  [If this statement is accurate, check **ONE** of the six statements
21  below and fill in any additional information as required, then proceed to the signature block.]

22       ____    A mediation session with a court-appointed mediator was held on _____
                 [*enter date*], and as of this date, the parties have reached a settlement (*even if*
23               *paperwork to memorialize the settlement remains to be completed*).  (*If this box is*
                 *checked, the parties are on notice that they must SEPARATELY file either a*
24               *contemporaneous stipulation of dismissal or a motion requesting that the Court*
                 *continue the stay in the case until a specified date upon which they will file a*
25               *stipulation of dismissal.*)

26       ____    A mediation session with a court-appointed mediator was held on
                 _____ [*enter date*], and as of this date, the parties have not reached a
27               settlement.  The Office of the Attorney General therefore informs the Court of its
                 intent to proceed with this action.

28

                                               1

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. *(If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)*

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

* * * * *

**Situation Two: Informal Settlement Discussions Case: The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations**. [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)*

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____                    _____
                              Print                                                      Signature

Address:     _____     Phone: _____

            _____     Email: _____

2