UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Malcolm Gray,<br><br>    Plaintiff<br><br>v.<br><br>Greg Cox, et al.,<br><br>    Defendants | 2:14-cv-01094-JAD-PAL<br><br>**Order Granting Motion for Summary Judgment and Denying Motion for Clarification as Moot**<br><br>[ECF Nos. 24, 38] |

Pro se Nevada state-prison inmate Malcolm Gray sues five prison officials and a correctional officer for civil-rights violations that allegedly occurred while he was incarcerated at the High Desert State Prison. The prison-official defendants move for summary judgment, arguing that Gray's claims are unexhausted, fail as a matter of law, and are unsupported by the record evidence. I grant defendants' motion for summary judgment, enter summary judgment in their favor, dismiss without prejudice all claims against the correctional-officer defendant without prejudice under FRCP 4(m), and deny as moot defendants' motion for clarification.[1]

**Background**

Gray sues multiple defendants for events that allegedly occurred while he was incarcerated at Nevada's High Desert State Prison. He sues: NDOC Director Greg Cox, Deputy Director Sheryl Foster, Associate Warden Jennifer Nash, Warden Dwight Neven, Warden Bruce Stroud, and Correctional Officer Armbruster.[2] He asserts two counts and seeks declaratory judgment, injunctive relief, and monetary damages.

In claim one, Gray alleges that: On June 24, 2013, CO Armbruster neglected to pass out mail to the Unit 11 inmates, where Gray was housed.[3] The next day, porters informed Gray that they had

---

[1] I find these motions suitable for disposition without oral argument. L.R. 78-1.

[2] ECF No. 6.

[3] *Id.* at 4.

found a week's worth of Unit 11 mail in the trash bin.[4]  During that time, Gray had been waiting for mail containing a copy of a recent obituary for an immediate family member.[5]  Gray filed a grievance against Armbruster for throwing inmate mail away and had his family members call the HDSP to complain.[6]  As a result, Foster, Nash, Neven, Filson, Stroud, and Armbruster commenced a retaliatory campaign against him and stopped giving him his mail and/or delayed the receipt of his mail for more than 30 days.[7]

In claim two, Gray alleges that he was fired from his prison job and sent to the hole because contraband items had been found in the common area.[8]  Prison officials did not interview Gray and the other terminated inmates until after they had been fired.  Prison officials told all ten inmates that, unless someone stood up for the contraband, all ten would be fired and their levels reduced.[9]  He claims that he was never given notice of a classification hearing while in administrative segregation.[10]

On February 11, 2015, I screened Gray's amended complaint and permitted claim one to proceed against defendants Foster, Nash, Neven, Filson, Stroud, and Armbruster, permitted the portion of count two alleging due-process violations to proceed against defendants Cox, Foster, Nash, Neven, and Stroud, and dismissed the remaining portion of count two with prejudice.  I then stayed this case for 90 days to allow the parties a chance to settle their dispute.  The parties were unable to reach a settlement, so the magistrate judge lifted the stay.  Discovery has now closed, and

---

[4] *Id.*

[5] *Id.*

[6] *Id.* at 6.

[7] *Id.* at 4, 6.

[8] *Id.* at 11.

[9] *Id.*

[10] Gray included other allegations in count two but they are irrelevant to the due-process portion of this claim that I permitted to proceed after screening.

defendants move for summary judgment.[11]

## Discussion

**A.    Summary-judgment standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[12]  When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[13]  If reasonable minds could differ on the material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed and the case must proceed to the trier of fact.[14]

If the moving party satisfies FRCP 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[15]  The court may only consider facts that could be presented in an admissible form at trial in deciding a motion for summary judgment.[16] Summary judgment may not be granted by default.[17]

Defendants argue that summary judgment is appropriate on Gray's censorship/retaliation

---

[11] Gray was given the notice required under *Klingele v. Eikenberry* and *Rand v. Rowland*.  ECF No. 24.

[12] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[13] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[14] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[15] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[16] FED. R. CIV. P. 56(c).

[17] *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 949–50 (9th Cir. 1993).

claim because he failed to exhaust his administrative remedies, fails to establish a Constitutionally recognized harm stemming from the alleged mail censorship, and fails to explain how defendants retaliated against him. Defendants argue that they are entitled to summary judgment on Gray's due-process claim because he failed to exhaust his administrative remedies and received all the process that was due. I first address defendants' exhaustion arguments.

**B.     Exhaustion under the PLRA**

   *1.     Prisoner plaintiffs must fully exhaust the grievance process before filing suit.*

The PLRA requires inmates to exhaust all available administrative remedies before filing "any suit challenging prison conditions."[18] Failure to properly exhaust all available administrative remedies as required by the PLRA is "an affirmative defense the defendant must plead and prove."[19] Once a defendant proves that there was an available administrative remedy that the inmate did not exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."[20] Nonetheless, the ultimate burden of proof remains with the defendant.[21] The question of exhaustion is typically disposed of on summary judgment, with the judge deciding disputed factual issues relevant to exhaustion.[22] If feasible, exhaustion should be decided before reaching the merits of a prisoner's claims.[23]

In *Woodford v. Ngo,* the United States Supreme Court held that the PLRA's exhaustion requirement requires *proper* exhaustion.[24] Proper exhaustion means that the inmate must comply

---

[18] 42 U.S.C. § 1997e(a).

[19] *Jones v. Bock*, 549 U.S. 199, 204 (2007).

[20] *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

[21] *Id.*

[22] *Id.* at 1170–71.

[23] *Id..* at 1170.

[24] *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added).

with the prison's "deadlines and other critical procedural rules"[25] and properly use "all steps that the [prison] holds out" so that the prison is given an opportunity to address the issues on the merits.[26] And just last term in *Ross v. Blake*, the United States Supreme Court reiterated that the PLRA's proper-exhaustion requirement is mandatory: exhaustion is only excused if administrative procedures are not available.[27]

The NDOC has a three-level grievance process.[28] An inmate begins this process by filing an informal grievance. An inmate can appeal the prison's response to his informal grievance by filing a first-level grievance. To exhaust, the inmate must also appeal the prison's first-level response by filing a second-level grievance.[29]

### 2. *Claim one is partially unexhausted.*

Gray filed a grievance relating to the June 2013 mail-trash incident, grievance number 2006-29-63150.[30] In it, Gray complained about his mail being thrown away on June 25, 2013, and stated that he was expecting an obituary from his stepdad's recent funeral.[31] Gray grieved this issue through all three levels, so his mail-censorship claim is exhausted.

Citing broadly to Gray's grievance history, defendants claim that Gray failed to file *any* grievance regarding his claim that defendants intentionally withheld his mail in retaliation for Gray's

---

[25] *Id.* at 91.

[26] *Id.* at 90–91 (internal citation and quotation omitted).

[27] *Ross v. Blake*, 136 S. Ct. 1850 (2016) (holding that a court may not excuse an inmate's failure to exhaust administrative remedies before bringing suit under the PLRA, even to take "special" circumstances into account).

[28] AR 740.

[29] AR 740.04, 740.05, 740.06, 740.07.

[30] ECF No. 24-3.

[31] *Id.* at 8. Defendants represent that Gray complained only about a missing magazine, ECF No. 24 at 7, but his grievance history belies this assertion.

grievance against Armbruster.[32] But the grievance history they have provided shows that Gray *did* file a grievance complaining that defendants were intentionally withholding his mail in retaliation for a grievance he had filed, grievance number 2006-29-74264.[33]

The inmate grievance history shows only the opening lines of each grievance; it does not include the full text, which makes it difficult for me to ascertain whether Gray sufficiently grieved his retaliation claim. At the informal level, he complained: "'I recently filed a grievance regarding the mail being late. On 2/5 . . . I received a letter that had been mailed and postmarked 1/7/14 the rec'd stamp for the prison is 1/31/14. All these dates are evidence of a pattern . . .' (cont.)."[34] He appealed the informal response—that the prison mailroom was in compliance with operational procedures and that, "[d]ue to the magnitude of mail received at HDSP[,] sometimes mistakes happen"—by filing a first-level grievance in which he stated: "'I have factual proof that mail is being received then hold for days & weeks in the mailroom. This mail is then fraudulently stamped as being current . . . .' (cont.)."[35] He then appealed the first-level response—that his claim had been forwarded to the mailroom supervisor for review—by filing a second-level grievance in which he stated: "'On 5/29 I received mail from 5/19. That means this mail was intentionally held in the mailroom all that time. Even if mail is being monitored it is illegal to withhold my mail. I honestly believe a campaign of retaliation . . .' (cont.)."[36]

But this second-level grievance was "not accepted" because Gray failed to attach the envelopes he had referenced.[37] Because he did not resubmit it, it thus appears that the prison was not

---

[32] ECF No. 24 at 8.

[33] ECF No. 24-4 at 7. Gray also filed other grievances complaining about mail delays, but he did not complain about retaliation there, just that his mail was being handled in an "illegal and indifferent manner." *See id.* at 8.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

given the opportunity to address Gray's retaliation claim on its merits at the highest level as is required for proper exhaustion under the PLRA. Proper exhaustion means that the inmate must comply with the prison's "deadlines and other critical procedural rules."[38] Because the record reflects that there was an available administrative remedy that Gray did not exhaust—NDOC's second-level grievance procedure—the burden shifts to Gray to come forward with evidence that "there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."[39]

The record reveals that the second-level grievance process was available to Gray during this timeframe because the grievance history shows that he successfully exhausted other claims through all three levels during this period and that prison officials consistently responded to his grievances.[40] Thus, there is nothing to suggest that there was something about Gray's particular case that made the administrative procedures that NDOC holds out effectively unavailable to him for his retaliation claim. Accordingly, defendants are entitled to summary judgment on the retaliation portion of claim one because it is unexhausted.[41]

---

[38] *Ngo*, 548 U.S. at 91.

[39] *Baca*, 747 F.3d at 1172.

[40] *See generally* ECF No. 24-4.

[41] Even were I to consider the merits of Gray's retaliation claim, there is nothing in the record to suggest that the complained-of mail delays were the result of retaliation against Gray for the mail-trash grievance. Indeed, in his opposition to defendants' summary-judgment motion, Gray asserts that mail delays at the HDSP are systematic and have been occurring since 2006. ECF No. 33 at 3. The prison's responses to Gray's grievances also indicate that the complained-of mail delays were due to mailroom understaffing, and that the mailroom supervisor added additional staff to meet increased demand. ECF No. 24-4 at 8. After staffing was increased, Gray even admitted in a subsequent grievance that "mail delivery has improved drastically as of late," though he maintained that defendants were still fraudulently stamping mail with current dates. *Id.*

### 3. Claim two is unexhausted.

Defendants confusingly argue that Gray's *due-process* claim is unexhausted because he failed to file any grievances relating to his *retaliation* claim.[42] The grievance history shows that Gray filed one grievance that potentially relates to his due-process claim, grievance number 2006-29-84819. Gray wrote: "I arrived in Level 2 on 8/20 after a Not Guilty finding on an OIC . . . I have approx 4 years of continuous work experience prior to being level reduced . . . ."[43] At the first and second levels, he complained that job openings and the qualifications for those jobs are not posted.[44]

A prisoner does not have a protected property or liberty interest in prison employment so as to trigger due-process protections,[45] but a prisoner does have a protected liberty interest in avoiding placement in administrative segregation.[46] Though it appears that Gray exhausted a grievance about the loss of his prison job as a result of the disciplinary proceedings against him, he did not file a grievance complaining about the adequacy of the process that he received for his placement in administrative segregation. Thus, the prison was not "given an opportunity to address the issues" of his due-process claim "on the merits" as is required to satisfy the PLRA's exhaustion requirement.[47]

Because the record reflects that Gray did not exhaust the NDOC's three-level grievance process for claim two, the burden shifts to Gray to come forth with evidence that "there is something in his particular case that made the existing and generally available administrative remedies

---

[42] ECF No. 24 at 10.

[43] ECF No. 24-4 at 3.

[44] *Id.*

[45] *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004).

[46] A prisoner is entitled to procedural due-process protections only when a prison-disciplinary action "implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

[47] *Ngo*, 548 U.S. at 91 (internal citation and quotation omitted).

effectively unavailable to him."[48]  The grievance history shows that the administrative process was available to him because he successfully grieved several other issues—including his censorship claim—through all three levels during this timeframe.  Accordingly, defendants are entitled to summary judgment on Gray's due-process claim.[49]

### C. Defendants are entitled to summary judgment on Gray's First Amendment mail-censorship claim on its merits.

Defendants claim that it is undisputed that on June 25, 2013, an inmate porter discovered a day's worth of mail addressed to unit 11 inmates (where Gray was then housed) in a trash bin and alerted prison employees.[50]  The mail was recovered from the trash bin and distributed to the inmates the next morning, and the incident was referred to the Inspector General for investigation.[51]  Defendants argue that they are entitled to summary judgment because a 24-hour mail delay does not violate a prisoner's First Amendment rights.[52]  Gray responds that the fact that inmates discovered the mail in the trash can leaves in dispute "the amount of mail found, how many days worth of mail was found, and the true disposition of all the mail."[53]  He also disputes defendants' contention that all of the trashed mail was delivered: he claims that he never received a magazine and obituary that

---

[48] *Baca*, 747 F.3d at 1172.

[49] Even were I to consider Gray's due-process claim on its merits, the record reflects that he received adequate process relating to his placement in administrative segregation.  On May 29, 2014, Gray was temporarily moved to an administrative-segregation unit pending a narcotics investigation.  On June 6, 2014, an officer filed an incident report against Gray for narcotics violations. ECF No. 24-6 at 9.  Gray was given formal notice of the charges the next day. *Id.* at 8.  A preliminary disciplinary hearing was held about two weeks later, at which Gray pled not guilty. *Id.* at 6–7.  While the disciplinary charges were pending, prison officials twice reviewed Gray's placement in administrative segregation. ECF No. 24-5.  A formal disciplinary hearing was held on August 9, 2014, at which the formal-hearing officer found Gray not guilty of the charges. ECF No. 24-6 at 4–5.  Gray was returned to a general-population unit a few days later.

[50] ECF No. 24 at 4.

[51] *Id.*

[52] *Id.*

[53] ECF No. 33 at 2.

he was expecting.[54]

I find that defendants are entitled to summary judgment on Gray's mail-censorship claim. Even if an intentional 24-hour mail delay not attributable to any legitimate penological purpose were actionable, Gray has not shown that the June 2013 mail incident is attributable to any of the moving defendants.

A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant."[55] "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under § 1983." Though Gray claims that the HDSP has a policy of delaying delivery of inmate mail and falsifying time stamps, he does not allege or offer any evidence from which it could be inferred that the supervisory defendants either personally participated in, directed, or knew about and failed to prevent the June 2013 incident on which his censorship claim is based. Nor does he allege or offer any evidence to show that the supervisory defendants promulgated a custom or policy of discarding inmate mail in trash cans as is required to prevail on his official-capacity claims against these defendants.

Gray alleges that Correctional Officer Armbruster is the culprit who discarded the mail in the trash. But Armbruster has never been served, and he has not appeared in this action.[56] On December 8, 2016, the Clerk entered a notice of intent to dismiss under Rule 4(m) if proof of proper service on Armbruster was not filed by January 9, 2017.[57] This deadline has passed, and Gray has not filed proof of proper service. Because Gray fails to allege or offer any evidence to show that any of the supervisory defendants participated in the June 2013 mail incident, and all claims against Ambruster are subject to dismissal under Rule 4(m), the supervisory defendants are entitled to summary

---

[54] *Id.* at 12.

[55] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[56] Armbruster is no longer employed at the HDSP, and the Attorney General's Office did not accept service on his behalf.

[57] ECF No. 40.

judgment on Gray's mail-censorship claim and this claim is dismissed against Armbruster without prejudice under FRCP 4(m).[58]

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment **[ECF No. 24] is GRANTED**, and defendants' motion for clarification **[ECF No. 38] is DENIED** as moot.

The Clerk of Court is directed to ENTER JUDGMENT for defendants and against Gray and CLOSE THIS CASE.

Dated this 13th day of January, 2017.

_____
Jennifer A. Dorsey
United States District Judge

---

[58] Defendants' "motion for clarification" is really a notice of non-compliance with the Court's Notice of Dismissal under FRCP 4(m), which I deny it as moot. ECF No. 38.